UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYRRELL BROWN,<br>    Plaintiff,<br><br>    v.<br><br>ANGEL QUIROS, et al.,<br>    Defendants. | No. 3:23-cv-121 (SRU) |

## ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

Plaintiff Tyrrell Brown is currently incarcerated and appears *pro se*. He brings this civil rights action for an alleged privacy violation that occurred at Hartford Correctional Center. Brown and the defendants have cross-moved for summary judgment. For the following reasons, I **deny** Brown's motions for summary judgment, **docs. no. 97, 105**, and **grant** the defendants' motion for summary judgment, **doc. no. 113**.

### I.   Background

  A.   Factual History

I assume the parties' familiarity with the factual allegations. Relevant to the instant motions, Brown alleges that Matthew Dobos and Colleen Gallagher improperly accessed his sensitive medical records without consent.

Brown sought medical attention for issues concerning his ears and his stomach. He filed multiple administrative requests, remedies, and grievances seeking better medical attention. *See* Doc. No. 113-7 at 40, 43, 59, 62, 63. Two written correspondences are principally at issue. First, Brown wrote a letter to defendant Gallagher, the Department of Correction ("DOC")'s Health Services Program Director. Doc. No. 113-8 ¶¶ 2, 6. He stated that "no one's helping

[him]" with his ear and stomach.  *Id.* ¶¶ 8-9; *see also* Doc. No. 113-5 at 1.  Gallagher wrote in response, "[d]espite your belief that it is so, there is no evidence to support your claim that no one is helping you."  Doc. No. 113-6 (cleaned up).  Gallagher listed out the medical treatment Brown had recently received, including Brown's mental health treatment.  *Id.*

Second, Brown submitted an informal CN 9601 Inmate Request Form stating that he was "still having stomach problems and . . . hearing problems."  Doc. No. 113-4.  Defendant Dobos, the head nurse at Hartford Correctional, responded to the request.  *See id.*  Upon receiving the Inmate Request, Dobos accessed Brown's medical health file and physical health file.  *See* Doc. No. 113-9 ¶¶ 10-13.  Dobos's written response to the Inmate Request mentioned Brown's mental health treatment.  Doc. No. 113-4 ("Have been utilizing MH [mental health] services for stressors.") (cleaned up).

Brown now challenges the fact that Gallagher and Dobos "reviewed [his] mental health records and . . . mentioned his mental health treatment in their responses to his complaints about . . . his ear illness."  Doc. No. 97 at 20 ¶ 5.  Brown claims that he did not give consent for the defendants to look at his mental health records, and that doing so was an invasion of his privacy.  *Id.* at 20-21 ¶¶ 6, 10.

B. Procedural History

District Judge Vanessa L. Bryant denied the defendants' motion to dismiss Brown's claim alleging a violation of his right to privacy and granted the motion to dismiss all other claims against all other defendants.  *See generally* Doc. No. 61.  Brown filed a fourth amended complaint that now alleges only a Fourteenth Amendment privacy claim against Dobos and Gallagher.  Doc. No. 69.  The case was then transferred to me.  Doc. No. 76.

After discovery, Brown moved for summary judgment on liability. *See* Doc. No. 97 at 22. He filed a second motion for summary judgment with the same memorandum of law, but with fewer attached exhibits. *Compare* Doc. No. 97 *with* Doc. No. 105. The defendants filed an opposition, doc. no. 114, and cross-moved for summary judgment in full. Doc. No. 113. I take all summary judgment briefing and exhibits into consideration.

**II.     Standard of Review**

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (the court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

The same standard applies to cross-motions for summary judgment. A court must "assess each motion on its own merits and . . . view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inference in favor of that party." *Bey v. City of New*

4

*York*, 999 F.3d 157, 164 (2d Cir. 2021) (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)).

**III.     Discussion**

Brown and the defendants raise several arguments in support of their summary judgment motions, but the Prison Litigation Reform Act's exhaustion requirement alone resolves the motions.

A.  <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") imposes strict exhaustion requirements. Incarcerated plaintiffs must "exhaust such administrative remedies as are available" prior to bringing a civil suit challenging prison conditions. *Ross v. Blake*, 578 U.S. 632, 632 (2016) (quoting 42 U.S.C. § 1997e(a)) (cleaned up).

"Failure to exhaust administrative remedies is an affirmative defense.  Thus, the defendant bears the burden of proving that an inmate did not exhaust his or her remedies," but "the plaintiff bears the burden of demonstrating that" the process for exhausting administrative remedies "was unavailable." *Jordan v. Gifford*, 2022 U.S. Dist. LEXIS 138633, at *37-*38 (D. Conn. Aug. 4, 2022) (citing *Johnson v. Mata*, 460 F. App'x 11, 15 (2d Cir. 2012), and *Jones v. Bock*, 549 U.S. 199, 216 (2007)) (cleaned up).

Because Brown is incarcerated in a Connecticut prison, the administrative remedies available to him are prescribed by the Connecticut Administrative Directives. *See Nicholson v. Murphy*, 2003 U.S. Dist. LEXIS 22165, at *18 n.2 (D. Conn. Sept. 19, 2003).  Administrative Directive 8.9 "governs procedures for responding to a prisoner's request for review of health care services." *Coleman v. Charles*, 2024 U.S. Dist. LEXIS 82180, at *5 (D. Conn. May 6, 2024)

(citation omitted).  Administrative Directive 9.6 "governs prisoner complaints more generally." *Id.* (citation omitted).

Regardless of a state's administrative remedy requirements, incarcerated plaintiffs must put the defendants on notice of the claim(s) they intend to bring.  *See Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  The administrative grievance must "object intelligibly to some asserted shortcoming, . . . provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures," and "alert the prison to the nature of the wrong for which redress is sought."  *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)) (cleaned up).  The grievance must also "provide[] a sufficient basis for consideration of the other claims later sought to be raised."  *Wine v. Black*, 2024 U.S. Dist. LEXIS 85483, at *23 (D. Conn. May 11, 2024).

Brown submitted a Level 1 Health Services Administrative Remedy, a Level 1 Grievance Form, and four informal CN 9601 Inmate Request Forms.  Doc. No. 97 at 7, 9, 12-13, 17.  In those submissions, Brown alleged that he needed more medical treatment for his ears and stomach, new eyeglasses, and more sick calls.  *See generally id.*  Brown also testified that he had submitted other medical requests and remedies.  *See* Doc. No. 113-7 at 40, 43, 59, 62, 63.  Those submissions went unanswered and do not appear in the record.  *See id.*  According to Brown's deposition testimony, none of those submissions mentioned the alleged privacy violation, nor did they reference Brown's mental health records, Gallagher's letter to Brown, Dobos's written response to Brown's informal medical request, or the fact that Dobos and Gallagher viewed his mental health records.  *See id.*

Brown therefore failed to adequately notify the defendants of his Fourteenth Amendment privacy claim.

B. <u>No Exhaustion Exception Applies</u>

I engage in a two-step inquiry to determine whether an exhaustion exception to the PLRA applies. "First, courts must ask whether administrative remedies were in fact available to the plaintiff. Second, a court must consider whether administrative remedies were actually available to the aggrieved inmate." *Wine v. Black*, 2024 U.S. Dist. LEXIS 85483, at *19 (cleaned up).

The first of *Ross*'s enumerated exhaustion exceptions applies when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 633. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . [S]ome mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 633-34. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative scheme is deemed "unavailable." *Id.* at 644. "[T]he three circumstances discussed in *Ross* do not appear to be exhaustive," but "nonetheless guide the Court's inquiry." *Wine v. Black*, 2024 U.S. Dist. LEXIS 85483, at *14-*15 (quoting *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), and *Mena v. City of New York*, 2016 U.S. Dist. LEXIS 94188, at *12 (S.D.N.Y. July 19, 2016)).

Brown repeatedly claims that he received no responses from several of his administrative complaints and letters to DOC employees. Four higher-ranking DOC employees ignored his requests for greater medical care. *See* Doc. No. 113-5 ("I complained to . . . Nurse Marsha whom I handed my request to in person . . . . Nothing. . . . I have also handed . . . [the] Second Shift Commander [a] request . . . . Nothing.") (cleaned up); *See* Doc. No. 113-7 at 40 (Brown wrote to the DOC's Commissioner, his Warden, his Second Shift Captain, and to Gallagher). Brown testified at his deposition that other requests went ignored. Doc. No. 113-7 at 43 (testifying that he wrote a medical request to the DOC commissioner, who "never responds. . . .

7

The majority of all the requests that I've written, . . . none of them were answered except for the ones that I put in a person's hand.") (cleaned up); *id.* ("I only got maybe three responses out of all of the requests I wrote."); *id.* at 59, 62 (Brown submitted two medical requests and did not receive a response); *id.* at 63-64 (Brown submitted three or four Health Service Remedies before receiving a response).

Administrative Directive 8.9 generally has procedures for what to do if an incarcerated person receives no response to their requests, appeals, or grievances.[1]  A notable exception is Administrative Directive 8.9(6)(b)(iii)(1), which only states that "[a]n inmate may file a request for a Health Services Administrative Remedy if the inmate is not satisfied with the informal resolution offered."  Notwithstanding that provision's shortcomings, Brown managed to file several Health Services Administrative Remedies after he received no response from his informal medical request.  Doc. No. 113-7 at 63.  After the DOC transferred Brown from Hartford Correctional to Cheshire Correctional, he claims that he had to start his administrative remedies process anew and could not file a Level Two appeal.  *Id.* at 67-69.  Administrative Directive 8.9 is in disagreement:  "If a transferred inmate seeks to request a higher level of Health Services Administrative Remedy, the inmate may file an appeal at the new facility."  Administrative Directive 8.9(4)(q)(ii).

I conclude that the Connecticut DOC's administrative scheme was "actually available" to Brown.  *Wine v. Black*, 2024 U.S. Dist. LEXIS 85483, at *19.  There is no evidence in the record that Brown filed—or intended to file—a grievance regarding his Fourteenth Amendment privacy claim.  An incarcerated plaintiff "must exhaust his administrative remedies for each claim he

---

[1] For instance, if an incarcerated person does not receive a response to their Level 1 Health Services Administrative Remedy within thirty business days, they may file a Level 2 appeal.  Administrative Directive 8.9(6)(c)(ii)(4)(a).  If they receive no response to their Level 2 appeal within thirty days, they may again appeal to a Level 3.  *Id.* 8.9(6)(c)(iii)(4)(a).

8

asserts in federal court." *Williams v. Ford*, 2017 U.S. Dist. LEXIS 37746, at *11 (D. Conn. Mar. 16, 2017) (citation omitted). For the foregoing reasons, Brown has not exhausted his administrative remedies for the Fourteenth Amendment privacy claim.

### IV.    Conclusion

I **deny** Brown's motions for summary judgment, **docs. no. 97, 105**, and **grant** the defendants' motion for summary judgment, **doc. no. 113**. The Clerk is directed to enter judgment for defendants Gallagher and Nobos and to close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of September 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge